NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMÁAL ALLAH, | |
| Plaintiff, | CIVIL NO. 02-4247 (SRC) |
| v. | **OPINION** |
| CHRISTINE TODD WHITMAN, et al. | |
| Defendants. | |

**CHESLER, District Judge**

      **THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Ron Deligny, E. David Millard, and Jack Steinhauer (docket entry # 58).   The Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, denies Defendants' Motion.

**I. BACKGROUND OF THE CASE**

      Plaintiff Allah was arrested in December 1999 after a police officer observed him selling drugs.  His car was searched and he was subsequently charged with possession of a controlled dangerous substance ("CDS"), possession of CDS with intent to distribute, and distribution of CDS.  In September 2000, Lakewood police received a tip that Plaintiff was traveling by car with crack cocaine.  While following his vehicle, the officers observed Plaintiff discard the cocaine from his window, of which 30 grams was later recovered.  Plaintiff was then charged with

possession of CDS, possession with intent to distribute CDS, possession with intent to distribute CDS in a school zone, and eluding.  Plaintiff was charged again with possession of CDS and possession with intent to distribute CDS later that same month when police conducted surveillance following a confidential informant tip.  At that time, Plaintiff was found with crack cocaine in his sock.

In May 2001, Plaintiff entered into a negotiated plea agreement with the Ocean County Prosecutor's Office.  The State agreed to dismiss the December 1999 indictment in its entirety, and two counts under the early September 2000 indictment.  Plaintiff pled guilty to the remaining charges.  He was sentenced on December 7, 2001, and consistent with his plea agreement he was sentenced to a ten-year custodial term with a five-year period of parole ineligibility.[1]

Four days after the sentencing, Plaintiff filed a motion for reconsideration.  In support of his motion, Plaintiff pointed to indictments against two Lakewood police officers for their use of excessive force against a citizen in July 2001.  The officers were charged with official misconduct, aggravated assault, false swearing, falsifying records, hindering apprehension and conspiracy.  Further, Plaintiff alluded to being racially profiled by these officers.  He complained that his trial counsel had failed to act on the indictments against these officers during his case.  Finally, Plaintiff requested transfer to a drug rehabilitation program.

Plaintiff's motion was denied without prejudice because it was procedurally barred.  The request for transfer to a drug rehabilitation program was also denied.  Plaintiff made another

---

[1]Plaintiff Allah was sentenced to a ten-year custodial term with a five-year period of parole ineligibility for the first September 2001 charges and sentenced to an eight-year term with a four-year period of parole ineligibility for the second September 2002 charges.  The sentences, however, were made concurrent by Judge James N. Citta.

motion for reconsideration in January 2002.  This request was also denied.

Plaintiff appealed his conviction to the Superior Court of New Jersey, Appellate Division, contending that the State violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), by failing to reveal the claims against some of his arresting officers.  He asserted that this information would have been helpful in his defense.  Plaintiff claimed this violation impaired the voluntariness of his plea, and alleged misconduct on the part of the prosecutor's office and its employees.

While this appeal was pending in state court, Plaintiff filed a Complaint in this Court against various defendants.  Certain claims of that Complaint were dismissed by a Order from the Court on or about January 14, 2003, and the Court granted Plaintiff leave to file an Amended Complaint. (Docket at 3.)  Plaintiff's Amended Complaint seeks damages and injunctive relief pursuant to 42 U.S.C. § 1983 for alleged violations of his rights under the United States and New Jersey Constitutions. (Am. Compl. ¶ 1.)

Plaintiff asks this Court to find that Defendants violated his "civil rights by racially/selectively profiling, assaulting/beating, bring false criminal charges against and official misconduct [sic]," and to "[d]eclare that defendants actions violate[d] plaintiffs [sic] rights under the Constitutions of New Jersey and the United States."  (<u>Id.</u> at 9-10.)  Plaintiff asserts he was beat "solely because he's African American Muslim."  (<u>Id.</u> at 10.)   He alleges that the Defendants "conspired in abridging and violating plaintiff's Civil Rights, State and Federal Constitutional Rights as to falsely forge documents and fabricate criminal charges to secure an illegal conviction and incarceration [sic]." (<u>Id.</u> at 4-6.)  Plaintiff asks the Court to enjoin Defendants from "further violation of plaintiff's Civil rights" and requests an award of $500,000 in compensatory damages and $500,000 in punitive damages.  (<u>Id.</u>)

3

On or about December 2, 2003, this Court administratively terminated Plaintiff's case pending the outcome of the state court appeal.  The matter was reopened at Plaintiff's request following the Superior Court of New Jersey, Appellate Division's decision to deny Plaintiff's appeal.  Upon reopening the case, the Court dismissed claims against Defendants Christine Todd Whitman and John Farmer at Plaintiff's request.  Subsequently, four of the remaining seven named Defendants, E. David Millard, Ronald F. Deligny, John Steinhauer, and Harold Van DeZilver  filed a motion for summary judgment.  On or about March 29, 2005, this Court granted in part and denied in part the that motion, dismissing three of Plaintiff's four claims.  Plaintiff's claim of excessive force remained.  The same Defendants now move for summary judgment as to this claim.


## II. SUBJECT MATTER JURISDICTION - Heck and Rooker Feldman Doctrines

Subject matter jurisdiction is a threshold issue concerning the very power of the Court to entertain this action.  The Court has a continuing obligation to address the issue, even *sua sponte*, if there is cause to believe the Court lacks such jurisdiction.  Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 420 (3d Cir. 2001) (citations omitted).  Defendants argue that Plaintiff's remaining claim is precluded by the Heck and Rooker-Feldman Doctrines, denying this Court of subject matter jurisdiction over the remaining claim.

Plaintiff filed his Amended Complaint on or about May 16, 2004.  In this pleading, Plaintiff alleges claims under 42 U.S.C. § 1983 ("Section 1983") for violations of his "Constitutional and Civil Rights."  (Am. Compl. at 2.)  In its March 29, 2005 Opinion and Order, this Court articulated what it viewed as Plaintiff's four alleged causes of action.  The Court

4

concluded that three of those claims were indeed precluded for a lack of subject matter jurisdiction.  The Prosecutor Defendants now argue that the Court should dismiss the remaining claim under the same rationale.

The Rooker-Feldman Doctrine bars a state court losing party from seeking appellate review in the federal courts and circumscribes the appellate jurisdiction of the lower federal courts.   The Doctrine is based on "the well settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." Parkview Assocs. Pshp. v. City of Lebanon, 225 F.3d 321, 324 (3d Cir. 2000).  Rooker-Feldman bars a federal proceeding when "entertaining the federal court claim would be the equivalent of an appellate review" of the state judgment.  FOCUS v. Alleghany County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996).

In short, "Rooker-Feldman applies ... when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." Id.   In application, the Court must decline to hear a cause of action "if the claim was 'actually litigated' in state court prior to the filing of the federal action ... or if the claim is inextricably intertwined with [the] state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." Desi's Pizza, 321 F.3d at 419 (citations omitted).

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court considered a Section 1983 claim by a prisoner seeking monetary damages for the "unlawful, unreasonable, and arbitrary investigation" leading to his arrest and for the use of "an illegal and unlawful voice identification procedure" used at his trial.  He further sought relief for destruction of evidence he

5

claimed could have "proved his innocence." 512 U.S. at 479. The named defendants were the prosecutors and a police department investigator involved with his case. Id. In affirming the District Court's dismissal of the claims, the Supreme Court announced the following rule:

> In order to recover on damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Id. at 486-87.

In the instant case, Plaintiff seeks damages, specifically "[c]ompensatory damages of $500,000 against each defendant and punitive damages of $500,000 against each defendant." (Am. Compl. at 10.) Thus, if claims asserted by Plaintiff would "necessarily imply the invalidity of his conviction," then they must be dismissed under Heck. 512 U.S. at 486-87.

Defendants argue that because Plaintiff seeks remedy for a constitutional violation, a verdict in his favor would necessarily undermine his state court conviction. (Defs.' Brief at 9.) This contention is ludicrous. There is simply no logical or legal argument that would allow a court to conclude that a lawful conviction for drug possession would be called into question by a finding that excessive force was unlawfully used at the time of arrest. Indeed, none of the cases cited by Defendants say as much. See e.g., State v. Gaffey, 92 N.J. 374, 389 (1983) (adequate time elapsed during which the defendant had been institutionalized and remained unfit to be tried); Barker v. Wingo, 407 U.S. 514 (1972) (right to speedy trial); State v. Tropea, 78 N.J. 309 (1978) (state failed to prove essential element of the offense). Not only do Defendants fail to

provide case law holding that a successful excessive force claim will invalidate a conviction, the cases they do cite are not even on point.

Defendants assert, "This case presents exactly such a [constitutional] issue, for though not explicitly articulated in his Complaint, Plaintiff is in essence claiming that his constitutional rights were violated by the arresting officers' use of excessive force upon him." (Defs.' Br. at 10.) Strangely, Defendants then undertake analysis as if Plaintiff's claim challenged the validity of the search at his arrest. Defendants point out that excessive force claims are analyzed under the Fourth Amendment, Graham v. Connor, 490 U.S. 386, 395 (1989), and therefore, they contend that Plaintiff's cause of action of the unlawful use of excessive force necessarily challenges the search leading to evidence used against him. Defendants argue that suppression of this evidence "would have eliminated any possibility of the State proving its case" and the evidence was "vital to the State being able to successfully prosecute Plaintiff." (Defs' Br. at 10, 12.) This argument is nonsensical.

Simply because a claim asserting the unlawful use of excessive force is analyzed under the Fourth Amendment does not convert that claim into one for an unlawful search. In its previous Opinion, this Court clarified Plaintiff's claim for the parties based upon the language in the Amended Complaint: "Defendants ... violated plaintiff's constitutional rights and civil rights by physically beating him, caused by defendants deliberate abuse and excessive use of force by beating plaintiff up after handcuffed." (Am. Compl. at 9.) No where in Plaintiff's Amended Complaint does he challenge the search or any search. Therefore, when Defendants argue that "the unlawful search of Plaintiff would have led to the suppression of evidence used against [him], and would have eliminated any possibility of the State proving its case," (Defs.' Br. at

10.), they assert a legal reality which is not at all relevant to the instant claim or the Court's consideration of the instant motion.

In short, this Court is unconvinced and unimpressed by Defendants' argument that Plaintiff's cause of action for the unlawful use of excessive force is precluded by either the <u>Heck</u> or <u>Rooker Feldman</u> doctrines. Defendants' brief reads as if it is trying to fit a round peg into a square hole, and the resulting argument is (not surprisingly) garble. The Plaintiff's underlying state conviction was for drug possession. It is entirely possible for Plaintiff to be guilty of this offense, as he so pled, while also finding that excessive force was unlawfully used in his arrest. Neither the <u>Heck</u> Doctrine nor the <u>Rooker Feldman</u> Doctrine preclude his claim in Federal Court.

## III. SUMMARY JUDGMENT - Absolute Immunity

Having determined that this Court does indeed have subject matter jurisdiction to consider Plaintiff's remaining claim, the Court turns to Defendants' alternative argument of absolute immunity.

### A. Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Orson, Inc. v. Miramax Film Corp.</u>, 79 F.3d 1358, 1366 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995). The

threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

**b. Absolute Immunity**

Absolute immunity exists for those officers who perform judicial or quasi-judicial function. Imbler v. Pachtman, 424 U.S. 409, 420 (1976). Prosecutors are absolutely immune from liability for their conduct in "initiating a prosecution and presenting the State's case" insofar as that conduct is "intimately associated with the judicial phase of the criminal process." Id. at 430-32. Other officers, such as investigators, enjoy qualified immunity for their discretionary function. Malley v. Briggs, 475 U.S. 335, 340 (1986).

Defendants Millard and DeLigny argue that as prosecutors at the time of the action in question, they enjoy absolutely immunity. They assert that "even assuming all Plaintiff's

9

allegations to be true ... [they] are absolutely immune from liability, as a matter of law." (Defs.' Br. at 17.)  In support of this argument, Defendants cite several examples of prosecutorial conduct which has fallen under the protection of absolute immunity, such as deciding whether to seek an indictment, preparing for a grand jury trial, and presenting evidence at a probable cause hearing. (Defs.' Br. at 16.)  Defendants then proceed to defend their conduct in this case by pointing to arguments made in Plaintiff's previous summary judgment opposition papers in which he asserted that Defendants did not "look into" or investigate his previous assault complaints. (Defs.' Br. at 17.)  Defendants suggest that based upon these assertions, their decision not to pursue Plaintiff's complaints of misconduct fall within their prosecutorial duties.

Defendants miss the point and once again argue claims that do not exist in this matter. The cause of action asserted in Plaintiff's Amended Complaint and the one which Defendants need to defend is that of the underlined use of excessive force.  Plaintiff's arguments submitted in previous motion practice do not and cannot create a new cause of action in this case.

The Court will not determine today whether or not absolute immunity applies to Defendants Millard and DeLigny.  Indeed, the Court is unable to consider this argument as Defendants proffer no evidence that would allow the Court to conclude their role and involvement in this case was only in their judicial or quasi-judicial role.  Defendants' exhibits are previous court opinions and orders, briefs from previous motion practice, and the Amended Complaint.  The record provided is void of affidavits, or other evidentiary materials, which would provide this court with a factual basis to conclude Defendants Millard and DeLigny's involvement in this case was within their judicial or quasi-judicial roles.  Defendants state "No material issue of fact exists here."  (Defs.' Br. at 17.)  While that may be true, summary judgment

10

requires that Defendants properly support a showing of no triable issues of fact.   Defendants

proffered papers fail to meet this burden. Therefore, the Court is unable to consider Defendants'

argument for absolute immunity.

## III. AMENDED COMPLAINT - Timing

As a last resort, Defendants invite this Court to dismiss Plaintiff's final cause of action

for a failure to file the Amended Complaint in the time permitted.  This argument is identical to

the one brought in Defendants' previous motion for summary judgment.  Defendants argued

then, and they argue again now, that Plaintiff failed to comply with the Court's order to file his

Amended Complaint within 45 days of a January 8, 2003 Order.  In the previous motion practice,

Plaintiff pointed to a March 24, 2003 Order issued by Magistrate Judge Hughes (docket entry 7).

In that Order, the Court granted Plaintiff additional time to file.  Defendants' letter brief dated

January 31, 2005, "concede[d] this issue in light of the Court's Order."  (Docket item #52, fn.2.)

As such, the Court is surprised to see this argument brought by these same Defendants once

again and will dismiss it for obvious reasons.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, the Court denies Defendants'

Motion for Summary Judgment.  An appropriate form of order will be filed herewith.

Date:   August 17, 2005

                                                    _s/Stanley R. Chesler____
                                                    Stanley R. Chesler, U.S.D.J.