<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALLAH, | Hon. Stanley R. Chesler, U.S.D.J. |
| plaintiff, | |
| v. | Civil Action No. 02-4247 |
| WHITMAN, et al., | **OPINION** |
| defendants. | |

<u>**CHESLER, District Judge**</u>

**I.      INTRODUCTION**

This is a civil rights case brought by plaintiff Jamaal W. Allah for, <u>inter alia</u>, recovery of damages he allegedly sustained from violations of his Constitutional rights that occurred during his three drug-related arrests in Lakewood, New Jersey. Defendants Lakewood Police Chief Michael Lynch, Officer Steven Kelusak, Officer Christopher Spagnuolo, and Detective Harry Van Dezilver, the Lakewood police officers allegedly involved in the arrests, now move for summary judgment. [Docket Entry No. 60.] For the reasons that follow, the motion is **GRANTED IN PART AND DENIED IN PART**.

**II.     FACTS**

Plaintiff's claims arise from three arrests that occurred in 1999 and 2000. The first arrest occurred on December 28, 1999. On that day, defendant Kelusak, at the behest of detective Van Dezilver, arrested plaintiff for, <u>inter alia</u>, possession of a controlled dangerous substance

1

("CDS"). Plaintiff claims that defendants Kelusak and Van Dezilver falsely arrested him knowing that he had done nothing wrong (Deposition of Jamaal W. Allah ("Allah Dep.") at 43:12-44:17) and that Van Dezilver coerced a witness to implicate him in the CDS offense (id. at 22:2-12, 25:21-26, 48:12-21). Plaintiff's claims regarding the December 1999 arrest do not involve physical contact between him and the arresting officers.

The second arrest occurred on September 15, 2000. On that date, Lakewood police officers apprehended the plaintiff and a chase ensued, which ended when his car hit a fence. (Id. at 70:4-10.) The officers extracted plaintiff from his car and arrested him. (Id.) Plaintiff claims he was assaulted during the course of the arrest. He stated:

> . . . while I'm still inside the car, Spagnuolo comes to the car window, Officer Spagnuolo, and pulls me out through the window of the car.
>
> Once I'm on the ground, Officer Kelusak and Officers Spagnuolo and Mr. Steinhauer, Investigator Steinhauer is there, because the ones inside the car, they were from the strike force. So Mr. Steinhauer was inside the car.
>
> They handcuffed me and put my hands behind my back and put me face down in the ground and it's pouring rain outside, so my face is inside mud. And Mr. Kelusak, Mr. Spagnuolo and Mr. Steinhauer start stomping me out, whipping my behind.
>
> There's a lieutenant or captain, I'm still trying to figure out who he is because he had a white shirt from the Lakewood Police Department, he had a white shirt on and he had a poncho on over his shirt, and I remember he had the police hat on and he had plastic over it. He was standing there saying yes, you're all doing a good job.
>
> Then Mr. Steinhauer gets my hair before Steinhauer even gets my hair, Mr. -- Officer Spagnuolo has a long black flashlight and he's beating me over my head and stomping me out, beating me to the point that I'm almost unconscious.

> Mr. Steinhauer then gets my hair and wraps it around his hand and starts punching me in the back of my head. And then he tells me that listen, if you say another word, we could easily just kill you tonight and that would be the end of it.

(Id. at 70:20-72:5.) Plaintiff stated he did not resist during the arrest. (Id. at 72:24.) Plaintiff was charged with possession of CDS and pled guilty. (Id. at 77:16-19.)

The third arrest occurred on September 26, 2000 and also involved defendants Spagnuolo and Steinhauer. Plaintiff testified that on this occasion, the officers pulled him over at a convenience store in Lakewood and threw him on the ground. (Id. at 92:18-24.) He stated defendant Steinhauer punched him once in the head while he was handcuffed. (Id. at 97:19-21.) Plaintiff was charged with possession of CDS as a result of this stop and pled guilty.

Based upon these events, plaintiff filed the Complaint in this matter on August 28, 2002. [Docket Entry No. 1.] Plaintiff sued Attorneys General of the State of New Jersey Christine Todd Whitman and John Farmer, members of the Ocean County Prosecutors' Office, and Lakewood Township Police officers. Plaintiff's claims against all defendants are broadly stated and include violation of his constitutional rights through, inter alia, assault and physical harm. (Amend. Complt. at 6-7.)

Several motions have been adjudicated in this case. With the consent of the plaintiff, on October 13, 2004, the Court granted an application to dismiss all claims against Attorneys General Whitman and Farmer. [Docket Entry No. 45.] On December 7, 2004, defendants from the Ocean County Prosecutors' office moved for summary judgment on claims against them. [Docket Entry No. 47.] On March 29, 2005, the Court granted in part and denied in part the Ocean County Prosecutor's Office's motion and dismissed plaintiff's claims of malicious

prosecution, forgery/perjury, and racial profiling. [Docket Entry No. 55.] The Court's Order stated that "the Plaintiff's remaining claim in this lawsuit is excessive force." On June 17, 2005, certain of the Ocean County Prosecutors' Office defendants made a further motion for summary judgment [Docket Entry No. 58], which the Court denied in an Opinion and Order dated August 17, 2005 [Docket Entry No. 67].

On July 21, 2005, the movants filed the instant motion seeking summary judgment on plaintiff's claims against the Lakewood police officer defendants. Movants argue that summary judgment is proper because (1) plaintiff's claims arising from the December 28, 1999 arrest are untimely (Defendants' Brief at 15-17); (2) their conduct in connection with the September 15, 2000 and September 26, 2000 arrests did not constitute excessive force as a matter of law and/or is protected under the doctrine of Qualified Immunity (id. at 20-24); and (3) the claims against defendant Lynch are in his official capacity only are, therefore, are redundant to the already dismissed claims against Lakewood Township (id. at 24).

In his opposition, plaintiff generally argues that the relief sought has already been denied in connection with prior motions. (Opposition at Point One.) The Court disagrees with plaintiff's position. The Court has not yet considered any of the issues presented by the instant motion. Although plaintiff has not substantively addressed the defendants' legal arguments, the Court is mindful of his pro se status, and will analyze each argument in view of the applicable case law.

### III. DISCUSSION

#### A. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing

the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); Fed. R. Civ. P. 56(c). Thus, a court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

To raise a genuine issue of material fact, "'the [summary judgment] opponent need not match, item for item, each piece of evidence proffered by the movant,' but simply must exceed the 'mere scintilla' standard." Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (holding "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."). It is incumbent upon the party opposing the motion to "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, "[t]here must be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). With these principles in mind, the Court turns to the defendants' motion.

    **B.    Statute of Limitations**

The movants argue that plaintiff's claims relating to the December 28, 1999 arrest should

be dismissed as untimely. Plaintiff's opposition does not address this issue.

The statute of limitations for plaintiff's claims arising from the December 28, 1999 arrest is two years. Because 42 U.S.C. Section 1983 does not contain a statute of limitations, "federal courts must look to the statute of limitations governing analogous state causes of action." Urritia v. Harrisburg County Police Dept., 91 F.3d 451, 457 n.9 (3d Cir. 1996); see also Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir.1998). In Section 1983 actions, federal courts apply the statute of limitations for personal injury actions in the jurisdiction in which the case is venued. See Wilson v. Garcia, 471 U.S. 261, 276-280 (1985). Thus, the federal constitutional claims embodied in Counts One through Four are governed by New Jersey's two-year personal injury limitations statute, N.J.S.A. 2A:14-2.[1]

The Complaint in this matter was filed on August 28, 2002, more than two years after plaintiff's December 28, 1999 arrest. Accordingly, all claims arising from that incident are untimely and, therefore, are dismissed. Since the allegations against defendant Van Dezilver are limited to his involvement in the December 28, 1999 arrest, the Complaint is dismissed in its entirety as to that defendant.

Incidentally, plaintiff's claims regarding the December 28, 1999 arrest are limited to malicious prosecution-type claims. (See Allah Dep. at 43:12-44:17; 22:2-12; 25:21-26; and 48:12-21.) As this Court noted in its March 29, 2005 opinion, plaintiff has pled guilty to the

---

[1]N.J.S.A. 2A:14-2 provides in relevant part:

> Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within 2 years next after the cause of any such action shall have accrued . . . .

offenses charged as a result of the December 28, 1999 arrest and has exhausted state applications with respect to his sentence and conviction. Since plaintiff had failed to prove that the criminal proceeding giving rise to his malicious prosecution claim concluded in his favor, he cannot pursue a malicious prosecution claim. See Heck v. Humphrey, 512 U.S. 477, 484 (1994). Thus, it appears to be law of the case that, even if timely brought, these claims could not proceed.

  C.  **Excessive Force**

Plaintiff claims that defendants' conduct during the September 2000 arrests constitutes excessive force. The Fourth Amendment protects citizens from excessive force by governmental officials. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003) (quoting Abraham v. Raso, 183 F.3d 279, 288 (3d Cir.1999)). Defendants do not argue that plaintiff's arrest was not a "seizure," but rather that their conduct during the course of the arrest was reasonable. Specifically, defendants argue that the September 2000 arrests are not actionable because (1) the amount of force allegedly used did not rise to the level of a deprivation of constitutional rights (Defendants' Brief at -18-20, 23-24); and (2) the defendants' conduct was reasonable under the circumstances and, thus, they are entitled to Qualified Immunity (id. at 20- 24).

Government officials performing discretionary functions are generally entitled to qualified immunity. See Wilson v. Layne, 526 U.S. 603, 609 (1999). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (quotation and citation omitted). The Supreme Court has emphasized that it is "an immunity from suit rather than a mere defense to liability." Id. (quotation and citation

omitted). Even so, a government official has the burden of establishing that he is entitled to such immunity. See Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).

Consideration of a qualified immunity defense involves a two-step inquiry. First, the Court must examine whether or not the alleged conduct, taken in the light most favorable to the plaintiff, violated a constitutional right. Saucier, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id. If the allegations amount to the violation of a constitutional right, the Court must proceed to the second inquiry and determine if the right was "clearly established in the specific context of the case." See Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam); see also Saucier, 533 U.S. at 202 (noting that an officer is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). To determine if the law was clearly established, a court must examine "whether the state of the law at the time the violation occurred" gave defendants "fair warning that their alleged treatment [of the plaintiff] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 741 (2002).[2]

Viewing the evidence in a light most favorable to the plaintiff, as the Court must, it is apparent that there is an issue of fact as to whether or not defendants Spagnuolo and Kelusak

---

[2]The movants do not argue that plaintiff did not have a clearly defined constitutional right at the time of the September 2000 arrests. Indeed, there is no question that plaintiff enjoyed a clearly defined Constitutional freedom from excessive force at that time. See, e.g., Black v. Stephens, 662 F.2d 181, 188 (3d Cir. 1981) (quotations omitted) (holding "[t]he protection of fundamental liberties by the due process clause and the eighth amendment extends to protection from an official's abusive exercise of his powers to inflict grossly undue harm."). Rather, defendants' arguments focus on the amount of force used and whether or not it was reasonable under the circumstances.

used excessive force in connection with the September 15, 2000 arrest.  Plaintiff testified that defendant Spagnuolo extracted him from his car through the window, handcuffed him, stomped on him while restrained and laying prostrate, and beat him with a flashlight "to the point that I'm almost unconscious."  He testified that defendant Kelusak participated in the beating by stomping him.  He further testified they stood by while defendant Steinhauer, an investigator for the Ocean County Prosecutor's Office, punched him repeatedly in the head while he was laying handcuffed and threatened to kill him.  As to the September 26, 2000 arrest, plaintiff has testified that he was extracted from his car, handcuffed face down on the pavement, and punched in the head by defendant Steinhauer while defendant Spagnuolo stood by.  The Court is satisfied that this alleged conduct could rise to the level of excessive force.

     Moreover, defendants are not entitled to Qualified Immunity with respect to their alleged conduct during September 2000 arrests.  Defendants' argument that "the actions of the officers in using force against this known dangerous and recidivist drug dealer were clearly objectively reasonable under the circumstances and did not violate clearly established law" (Defendants' Brief at 24) is dubious, to say the least.  Plaintiff's allegation that he was laying face down and handcuffed during the two alleged beatings all but ends the inquiry in this regard.  The defendants would be hard pressed to convince the Court that the alleged conduct that ensued under those circumstances could ever be deemed reasonable.  Further, there is nothing in the record, such as evidence of convictions for violent crimes, to support defendants' contention that plaintiff was "dangerous."  Even if there were evidence that plaintiff was dangerous, taking the allegations as true, he posed no threat at the time the alleged beatings occurred.  Moreover, while plaintiff admitted that "a chase ensued" before the September 15, 2000 arrest, there is no

evidence that plaintiff was fleeing after his car had stopped, and he testified he was not resisting. See Graham v. Connor, 490 U.S. 386, 396 (1989) (instructing that a factor to be considered in the reasonableness inquiry is whether the suspect "is actively resisting arrest or attempting to evade arrest by flight"). Given the plaintiff's allegations, and the Court's obligation to take them as true at this point, the Court cannot find the defendants immune from suit for their alleged conduct during the September 2000 arrests. For all these reasons, defendants' motion with respect to claims arising from those arrests is denied.

### E. Claims Against Chief Lynch

Defendants argue the claims against defendant Lynch are in his official capacity only and, therefore, are redundant to the already dismissed claims against Lakewood Township (Defendants' Brief at 24). Defendants do not argue that there is insufficient evidence of the intent behind defendant Lynch's alleged conduct and they cite no case law to support dismissal of claims against him. In his opposition brief, plaintiff argues that "even defendant Lynch who was the Chief of the Lakewood [sic] after being on notice of the assault still did nothing, ignoring his lawful duty to report a crime on a citizen of the country." (Opposition Brief at Procedural History.)

While plaintiff's claims against defendant Lynch in his official capacity may be barred under the Eleventh Amendment, the claims against him in his individual capacity, may proceed. In Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the United States Supreme Court held that state officials acting only in their official capacities may not be sued under Section 1983 because such suits would be no different from suits against the state itself, which are barred by the Eleventh Amendment. Id. at 71. Accordingly, summary judgment as to the

plaintiff's claims against defendant Lynch in his official capacity is appropriate.

A state official may, however, be held liable in his individual capacity for compensatory and punitive damages if the defendant's conduct can be shown "to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). While there is no respondeat superior liability in a Section 1983 claim, Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 694-95(1978), a plaintiff seek to impose personal liability upon a government officer for actions taken under color of state law, Hafer v. Melo, 502 U.S. 21, 25 (1991). To establish individual liability in a Section 1983 action, a plaintiff must "show that the official, acting under color of state law, caused the deprivation of a federal right." Hafer, 502 U.S. at 25. As the Court of Appeals for the Third Circuit has stated, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be held liable. Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (quotations omitted). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Rode, 845 F.2d at 1207.

Contrary to the defendants' assertion, plaintiff has sued defendant Lynch "in his individual and Offical capacities." (Amend. Complt. at 6.) Defendant Lynch was not present at the incidents from which the Constitutional claims arise. Indeed, plaintiff has offered no proof that defendant Lynch was personally involved or acquiesced in any way to the alleged Constitutional deprivations. Given the failure of proof as to this claim, the defendants' motion as to defendant Lynch is granted.

11

IV.     **CONCLUSION**

For all of the foregoing reasons, defendants' summary judgment motion is **GRANTED IN PART AND DENIED IN PART**, to wit:

1. The motion for summary judgment on plaintiff's claims against defendant Van Dezilver is **GRANTED** and such claim is **DISMISSED** with prejudice;

2. The motion for summary judgment on plaintiff's claims against defendant Kelusak arising from the December 28, 1999 arrest is **GRANTED** and such claim is **DISMISSED** with prejudice;

3. The motion for summary judgment on plaintiff's claim against defendant Lynch is **GRANTED** and such claim is **DISMISSED** with prejudice; and

4. The motion for summary judgment on plaintiff's claims against officers Kelusak and Spagnuolo in connection with the September 2000 arrests is **DENIED.**

An appropriate Order will follow.

January 23, 2006

/s/Stanley R. Chesler<br>United States District Judge